**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **RAMONA ANDERSON,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br>              v. ) <br> ) <br> **MICHAEL J. ASTRUE,** ) <br>     **Commissioner of Social Security,** ) <br> ) <br>     **Defendant.** ) <br> ) | **CIVIL NO. 3:10CV583** |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Ramona Anderson, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

1

judgment (docket no. 8) be GRANTED; and that the final decision of the Commissioner be AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on August 27, 2007, claiming disability due to carpal tunnel in both hands and trigger fingers, with an alleged onset date of July 23, 2007. (R. at 93-101, 108, 112.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 57-62; 64-67.) On February 4, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 23-52.) On August 3, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 9-20.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 11.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of bilateral carpal tunnel syndrome and right middle trigger digit with the residual effects of bilateral carpal tunnel release, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 11-14.) The ALJ next determined that Plaintiff had the RFC to perform medium work, except that she is limited to occasional fingering and grasping. (R. at 14-18.) Further, the ALJ found that Plaintiff had no limitations on sitting or standing and could lift twenty-five pounds frequently and fifty pounds occasionally, using two hands. (R. at 14-18.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a packer because of the level of exertion required. (R. at 18-19.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 19-20.) Specifically, the ALJ found that Plaintiff could work as a patient transporter, laundry folder, hotel housekeeper, or usher. (R. at 19-20.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 20.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ failed to perform a legally sufficient assessment of Plaintiff's RFC; and (2) the ALJ erroneously relied upon testimony of the vocational expert ("VE"). (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s

Mem.") at 3-10.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 8-16.)

    **A.    The ALJ's RFC assessment is supported by substantial evidence and application of the correct legal standards.**

Plaintiff asserts that the ALJ's RFC assessment is deficient because she failed to perform a function-by-function analysis of Plaintiff's capabilities and limitations. (Pl.'s Mem. at 5.) Plaintiff also contends that the ALJ did not provide any rationale to support the RFC determination, and "it is impossible to determine the genesis of these limitations or the reasons therefore." (Pl.'s Mem. at 5-6.) Plaintiff further alleges that the RFC assessment is facially inconsistent, in that Plaintiff lacks the ability to lift and carry objects frequently because she can only grasp occasionally. (Pl.'s Mem. at 7-8.)

The Court is not persuaded by either of Plaintiff's arguments that the ALJ's RFC analysis is legally deficient. On the contrary, the ALJ's RFC assessment spans approximately four pages, and contains specific reasons for the conclusion that Plaintiff is capable of performing medium work, except that she is limited to occasional fingering and grasping, and can lift twenty-five pounds frequently and fifty pounds occasionally, using two hands. (R. at 14-18.) The ALJ found that Plaintiff had no limitations on standing or sitting, as Plaintiff did not have any severe impairments affecting those capabilities. (R. at 11-18.) As the ALJ found that Plaintiff suffered only from severe disorders affecting her upper extremities, a finding that Plaintiff does not challenge, the ALJ focused her discussion on any limitations Plaintiff possessed as a result of her bilateral carpal tunnel syndrome and right middle trigger digit with the residual effects of bilateral carpal tunnel release. (R. at 11-19.)

The ALJ discussed Plaintiff's testimony and written statements, the medical record, and opinion evidence in the RFC assessment. As to Plaintiff's credibility, another aspect of the ALJ's decision that Plaintiff does not challenge, the ALJ found her not credible to the extent her allegations were inconsistent with the determined RFC. (R. at 15-18.) The ALJ discussed Plaintiff's medical records from July 2007 through January 2009, and did not find that such records supported Plaintiff's allegations of disabling symptoms. (R. at 16.) The ALJ also noted that Plaintiff's activities of daily living were "inconsistent with an individual who has experienced debilitating symptoms." (R. at 16.) After elaborating on Plaintiff's reports of her daily activities, the ALJ specifically noted that the self-reported activities were "inconsistent with an individual who cannot perform work with the above-stated [RFC]." (R. at 16-17.) The ALJ then discussed Plaintiff's medication regime, specifically noting that while Plaintiff had taken narcotic pain medications, she was then only taking a skeletal muscle relaxant. (R. at 17.) The ALJ concluded that Plaintiff's medication regime was "entirely inconsistent" with an individual who experiences debilitating symptoms. (R. at 17.) Additionally, the ALJ noted that Plaintiff did not report side effects of her medications, nor did progress reports and notes contain any references to debilitating side effects. (R. at 17.) The ALJ also found it significant that Plaintiff had been taking several of her medications for a considerable period of time, which indicated that her medications were not producing any significant or disabling side effects. (R. at 17.) The ALJ went on to note that there was no evidence that Plaintiff was prescribed anything other than medication and braces/splints to wear, and that no physician had referred her to a pain management clinic, although she alleged chronic pain. (R. at 17-18.) The ALJ found that Plaintiff had not required aggressive medical treatment, frequent hospitalizations, emergency room care, or additional surgical intervention, though she alleged totally debilitating symptoms.

(R. at 18.) Simply stated, the ALJ found that Plaintiff's history of treatment for her carpal tunnel syndrome was "entirely inconsistent" with an individual who experiences debilitating symptoms. (R. at 18.)

As to opinion evidence, the ALJ awarded some weight to the opinions of the state agency physicians, as they were "consistent with the evidence in the record." (R. at 18.) The ALJ did not award controlling weight to Plaintiff's treating primary care physician's opinion, as the opinion was inconsistent with other evidence in the record. (R. at 18.) Plaintiff does not challenge the ALJ's decisions regarding the opinion evidence.

It appears that the ALJ conducted an exhaustive examination of the record in her RFC assessment. Further, in addition to the extensive RFC assessment, the ALJ entertained a detailed discussion of Plaintiff medical evidence and testimony/written statements in her evaluation of Plaintiff's severe impairments. (R. at 11-14.) The Court cannot, therefore, conclude that the ALJ "failed to provide any rationale" to support the RFC assessment. (Pl.'s Mem. at 6.) It instead appears that Plaintiff isolated the ALJ's statement detailing the RFC, and disregarded the remainder of her analysis regarding such. Contrary to Plaintiff's assertion, it is quite possible to determine the genesis of the limitations imposed by the ALJ and the reasons therefore. (See Pl.'s Mem. at 5-6.)

Plaintiff's reliance on a district court case from the District of Columbia is similarly unpersuasive. See Lane-Rauth v. Barnhart, 437 F. Supp. 2d 63, 68 (D.D.C. 2006). First, the Court notes that Plaintiff fails to cite a subsequent opinion from another court in the same district, which expressly disagreed with the bright-line rule that the court in Lane-Rauth attempted to set. See Banks v. Astrue, 537 F. Supp. 2d 75, 84-85 (D.D.C. 2008). The court in Banks noted that while its Circuit Court had not specifically addressed whether the ALJ must

9

undertake a specific discussion of each of the exertional limitations in his RFC analysis, some courts had found that the function-by-function analysis is not required. 537 F. Supp. 2d at 84. The court in Banks also noted the holding of Lane-Rauth, yet nevertheless found that a function-by-function analysis of a plaintiff's RFC was not required, and that Social Security Ruling ("SSR") 96-8p does not require such a mandate. Banks, 537 F. Supp. 2d at 85. The court found that SSR 96-8p requires that an ALJ's RFC determination must *address* the exertional limitations, but written articulation of such limitations is not required, especially where the ALJ provides a thorough discussion of a plaintiff's limitations. Id.

Further, Lane-Rauth is distinguishable from the present case. In Lane-Rauth, the court found that the ALJ's ruling spent three pages simply listing the plaintiff's medical history and then conclusively stated that "based on the evidence…the [ALJ] finds that claimant retains the [RFC[ to perform sedentary work." 437 F. Supp. 2d at 67 (internal quotations omitted). The court also noted that an ALJ must build a "logical bridge" from the evidence to the conclusion. Id. at 67. The ALJ did so in this case. The ALJ did not simply list Plaintiff's medical history before concluding that Plaintiff was capable of medium work with the earlier noted limitations. Rather, the ALJ explained her reasons for accepting or rejecting relevant parts of the record, and sufficiently built a "logical bridge" to her ultimate conclusions.

Plaintiff's next argument, that the RFC assessment is "facially inconsistent," likewise must fail. The Court does not accept the assertion that an individual who can only occasionally finger and grasp items cannot frequently lift and carry objects of any weight. (Pl.'s Mem. at 8.) Other than the fact that Plaintiff offers no support for this bold assertion, common sense dictates that the abilities to finger and grasp are inherently different than the abilities to lift and carry. For example, the basic definitions of "grasping" and "lifting" are not the same. To "grasp"

means to take hold of, seize, or clasp firmly with the hand.[6] To "lift" means to raise, or direct or carry from a lower to a higher position.[7] Lifting does not necessarily involve grasping an object; nor does grasping an object necessarily involve lifting it. There are a plethora of examples in which one can "grasp" an item - a door handle, a computer mouse, a set of keys, or (in the idiomatic sense) straws – without lifting the item. In the same vein, an individual could lift an item by placing it into a bag and placing it on her back or shoulder, or the individual could slide her hands under a box and lift with both hands without ever actually "grasping" the box. Accordingly, there is simply no merit to Plaintiff's contention that her limitation to occasional grasping is inconsistent with her ability to lift and carry on a frequent basis. As such, the Court recommends that the ALJ 's finding be affirmed in this regard.

      **B.**      **The ALJ properly relied upon the VE's testimony in finding that there were occupations that exist in significant numbers in the national economy that Plaintiff can perform.**

Plaintiff finally contends that the ALJ erroneously relied upon the testimony of the VE. (Pl.'s Mem. at 8-10.) Plaintiff asserts that the ALJ's hypothetical question posed to the VE did not accurately reflect Plaintiff's RFC. (Pl.'s Mem. at 9.) Plaintiff also argues that the occupations identified by the VE are outside of the range of work that Plaintiff is capable of performing. (Pl.'s Mem. at 9-10.) Because three of the four identified occupations are allegedly outside of Plaintiff's range of work, Plaintiff asserts that she has demonstrated a "significant erosion of her occupational base." (Pl.'s Mem. at 10.)

The Court first notes that the hypothetical posed to the VE adequately reflected Plaintiff's RFC. The ALJ found Plaintiff capable of occasional fingering and grasping. (R. at 14.) In the

---

[6] The Free Dictionary, http://www.thefreedictionary.com/grasp (last visited July 26, 2011).

[7] The Free Dictionary, http://www.thefreedictionary.com/lift (last visited July 26, 2011).

hypotheticals posed to the VE, the ALJ included a limitation to occasional fine manipulation and grasping. (R. at 41.) The Court fails to see how such a limitation is inconsistent with Plaintiff's RFC. Interestingly, while in Plaintiff's own brief she relies on the language of SSR 85-15 in an attempt to demonstrate that "grasping" and "lifting" are interchangeable activities, Plaintiff fails to note that "fingering…require[s] progressively finer usage of the upper extremities to perform work-related activities." (Pl.'s Mem. at 7; SSR 85-15.) Plaintiff devoted a significant portion of her brief to the argument that "grasping" and "lifting" are similar activities, and a limitation in one necessarily means a similar limitation in the other, and yet then insinuates that "fingering" is not akin to "fine manipulation." (See Pl.'s Mem. at 7-9.)

It is clear from the questioning of the VE that the ALJ explicitly distinguished an ability for fine manipulation from an ability to "handle" or lift items. For example, the ALJ told the VE that a hypothetical individual could use her upper extremities for "reaching, for, for handling…but she can't use it for grasping…or fine manipulation." (R. at 41.) In response, the VE stated that "at all exertional levels, that the DOT describes *fingering or fine manipulation* as an occasional capability." (R. at 41, emphasis added.) Further, the VE told the ALJ that Plaintiff could not perform her past relevant work (as she performed it) as a laundry folder because it required constant *fingering*. (R. at 41.) In describing the occupations of hotel housekeeper and usher, the VE testified that *fingering* is done on an occasional basis. (R. at 42.) It is clear that both the ALJ and the VE understood "fine manipulation" to encompass "fingering," as that ability was extensively discussed. (R. at 40-45.) Accordingly, Plaintiff's contention that the hypotheticals did not accurately reflect her RFC is without merit.

Plaintiff's contention that her RFC precludes her from performing the occupations identified by the VE is equally without merit. Plaintiff asserts that the occupations are precluded

because they require the ability to frequently handle objects. (Pl.'s Mem. at 9-10.) However, as noted earlier, an ability to handle objects is not the same as the ability to finger or grasp objects. Further, the VE distinguished the abilities in his testimony. (See R. at 40-45.) Plaintiff fails to offer any evidence that the ability to frequently handle objects is somehow precluded by her ability to occasionally grasp objects.

However, even assuming that Plaintiff is correct that three of the four identified occupations are outside of her range of work, Plaintiff's argument that she has demonstrated a significant erosion of her occupational base is again flawed. Plaintiff concedes that the VE was able to identify one occupation, that of an usher, that Plaintiff was capable of performing. (Pl.'s Mem. at 10.) The VE testified that there are an estimated 110,000 of such jobs in the nation, and an estimated 330 in Virginia. (R. at 42.) Contrary to Plaintiff's assertion, this satisfies the Commissioner's burden to demonstrate that work exists in significant numbers *in one or more occupations* that Plaintiff is capable of performing. 20 C.F.R. §§ 404.1566(b), 416.966(b); see Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (finding that an estimated 110 jobs was not an insignificant number). Accordingly, the Court recommends a finding that the ALJ's decision is supported by substantial evidence and application of the correct legal standards, and should be affirmed.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 6) be DENIED; that Defendant's motion for summary judgment (docket no. 8) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                   /s/
                            DENNIS W. DOHNAL
                            UNITED STATES MAGISTRATE JUDGE

Date: July 28, 2011
Richmond, Virginia